******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., concurring. I join part I of the majority opinion, in which the majority rejects the unpreserved constitutional challenge of the respondent mother to the remote trial procedure used to adjudicate the petition to terminate her parental rights. I disagree, however, with part II of the majority opinion regarding the legal standard applicable to a motion for posttermination visitation. In my view, the scope of a trial court's authority under General Statutes § 46b-121 (b) (1) "to make and enforce . . . orders" that "the court deems necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child" simply does not provide a workable legal standard to guide a trial court's decision making on the subject of posttermination visitation, and the majority's revision of that language to effectively delete the words "or appropriate" is not a viable option. I agree with part II of Justice Keller's concurring opinion that, in the absence of further legislative guidance, the proper legal standard under these circumstances should be the standard articulated in General Statutes § 46b-59, which was designed and intended to apply to "[a]*ny* person" who seeks visitation with a minor child. (Emphasis added.) General Statutes § 46b-59 (b). Because it is clear on the present record that the respondent parents cannot prevail under the standard articulated by the majority or § 46b-59, I agree with the majority that the judgment of the Appellate Court reversing the trial court's orders denying the respondents' motions for posttermination visitation should be reversed. I therefore concur with the result the majority reaches in part II of its opinion.

I agree with the majority that nothing in our opinion in *In re Ava W.*, 336 Conn. 545, 248 A.3d 675 (2020), should be understood to suggest that terminated parents can obtain visitation under a loose or liberal standard. See part II of the majority opinion. Our holding in that case, first and foremost, established the threshold point that the trial court was not powerless to order posttermination visitation if necessary or appropriate to secure the welfare of the child. See *In re Ava W.*, supra, 589. Of course, the fact that a court has the *authority* to decide an issue often does not tell the court *how* to exercise that authority in any particular case, and, as to that more particular issue, the majority is correct that *In re Ava W.* cannot be read to suggest that the usual "best interest of the child" standard by itself supplies the proper decisional matrix in the case of posttermination visitation.

But none of this means that the "necessary or appropriate" standard, without more, is sufficient to guide the exercise of the trial court's general authority to make and to enforce orders in this delicate context.

There surely is no reason to believe that the legislature intended that broad and open-ended standard to supply the substantive rule of decision with respect to posttermination visitation, or, for that matter, any other ruling that is within the jurisdictional purview of a "juvenile matter," as defined by § 46b-121 (a). I recognize that we concluded in *In re Ava W.* that it was "more prudent" to derive the posttermination visitation standard from the "necessary or appropriate" formulation than to adopt the "best interest of the child" standard; id.; but it is abundantly clear now, if it was not then, that this standard, without more, does not provide sufficient legal guidance to trial courts adjudicating motions for posttermination visitation. Indeed, we implicitly acknowedged in *In re Ava W.* itself the need for additional adjudicative guidance when we observed that a trial judge would be required to devise and consider more particularized "factors" to determine whether posttermination visitation is necessary or appropriate. Id., 589–90. At the time, we left to the trial courts the task of formulating the more specific factors to guide their decision making, in the belief that they are "best equipped to determine the factors worthy of consideration in making this finding." Id. We also offered suggestions of our own and references for additional consultation along these lines.[1]

It therefore should come as no surprise that the broad "necessary or appropriate" standard now requires further refinement in light of the uncertainty on the subject that apparently has arisen in the wake of *In re Ava W.* The majority refines the "necessary or appropriate" standard by construing it to mean something closely approximating "necessary or necessary." See part II of the majority opinion. I would prefer to say that (1) the breadth and malleability of the statutory formulation require additional judicial gloss in the absence of direct legislative guidance addressing the specific context of posttermination visitation, (2) the supplementation to the "necessary or appropriate" formulation that we offered in our initial attempt to address the issue in *In re Ava W.* now appears to provide insufficient guidance, and (3) the most sensible and defensible legal framework to determine what is necessary or appropriate in this particular context is the standard set forth in § 46b-59. In the absence of further legislative guidance, I agree with part II of Justice Keller's concurring opinion that § 46b-59 provides the best legal framework for trial courts to adjudicate motions for posttermination visitation.[2] Applying the substantive standards set forth in § 46b-59 means that terminated parents seeking court-ordered visitation are subject to the same requirements as any other nonparents seeking such visitation. That standard is difficult but not impossible to meet, and it remains true, as we said in *In re Ava W.*, that trial courts are best able to decide whether the circumstances in any particular case warrant a carefully crafted order

of visitation in accordance with the statutory terms. Because the respondent parents failed to establish that posttermination visitation was necessary or appropriate under the majority's construction of that term or § 46b-59, I concur in part II of the majority opinion.

[1] We stated: "As examples—which are neither exclusive nor all-inclusive—a trial court may want to consider the child's wishes, the birth parent's expressed interest, the frequency and quality of visitation between the child and birth parent prior to the termination of the parent's parental rights, the strength of the emotional bond between the child and the birth parent, any interference with present custodial arrangements, and any impact on the adoption prospects for the child. See *In re Adoption of Rico*, [453 Mass. 749, 754–55, 905 N.E.2d 552 (2009)] (court explained circumstances in which order for posttermination visitation may be appropriate and warranted); see also A. Williams, Note, 'Rethinking Social Severance: Post-Termination Contact Between Birth Parents and Children,' 41 Conn. L. Rev. 609, 636 (2008) (listing factors to consider for posttermination visitation). Trial courts should, of course, evaluate those considerations independently from the termination of parental rights considerations." *In re Ava W.*, supra, 336 Conn. 590.

[2] Under § 46b-59, "a third party seeking visitation over a fit parent's objection must surmount a high hurdle . . . and . . . establish, by clear and convincing evidence, that (1) a parent-like relationship exists, and (2) denial of visitation would cause the child to suffer real and significant harm." (Citation omitted; internal quotation marks omitted.) *Boisvert* v. *Gavis*, 332 Conn. 115, 133, 210 A.3d 1 (2019); see part II of Justice Keller's concurring opinion, citing *Roth* v. *Weston*, 259 Conn. 202, 234–35, 789 A.2d 431 (2002).

I agree with Justice Keller that, because the statutory parent's objection to visitation is not of constitutional dimension, the burden of proof should be reduced to a preponderance of the evidence. See part II of Justice Keller's concurring opinion. I do not join Justice Keller's suggestion that an order of posttermination visitation should automatically terminate upon adoption, although I understand and acknowledge the concerns prompting that suggestion. Section 46b-59 (f) itself makes it clear that an order of visitation *may* be terminated upon adoption of the minor child: "The grant of such visitation rights shall not prevent any court of competent jurisdiction from thereafter acting upon the custody of such child, the parental rights with respect to such child or the adoption of such child and any such court may include in its decree an order terminating such visitation rights." In my view, whether to terminate visitation is a decision that should be made by the trial court under the particular factual circumstances of each case. I would hope that, if a trial court has determined that visitation with a terminated parent is warranted under the high standard prescribed by § 46b-59, a prospective adoptive parent would not allow the possibility of continued visitation to derail the adoption. I freely concede that my speculation on this point may be more aspirational in theory than justifiable in practice, but, at this juncture, it is unnecessary to decide the automatic termination question.