******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# LAURIE HEPBURN *v.* CHANDLER BRILL
## (SC 20832)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Dannehy, Js.

*Syllabus*

The plaintiff sought visitation with L, the minor child of the defendant
and the plaintiff's deceased sister, pursuant to the third-party visitation
statute (§ 46b-59). The plaintiff had lived with L and L's mother since
L was born in 2010, while the defendant lived elsewhere. After the death
of L's mother in 2021, L initially continued to live with the plaintiff, but
the defendant eventually took L to live with him full-time. The defendant
moved to dismiss the plaintiff's visitation petition for lack of subject
matter jurisdiction, claiming that the plaintiff lacked standing under
§ 46b-59 (b) because she failed to allege sufficient facts to establish that
she had a parent-like relationship with L and that L would suffer real
and significant harm if visitation were to be denied. The plaintiff then
filed an amended petition for visitation with L, in which she alleged
that, in a series of video calls that occurred while L was living with the
defendant, L appeared very stressed, sad, and anxious. During those
calls, L reported, inter alia, that she was miserable living with the defen-
dant and devastated to be cut off from the plaintiff. L stated that she
was crying herself to sleep and had lost weight. L also told the plaintiff
that the defendant had mocked her for crying about the loss of her
mother and had thrown her up against a car. The defendant objected
to the amended petition, arguing that it would be improper for the court
to consider the amended petition while the motion to dismiss the initial
petition for lack of subject matter jurisdiction was pending. Following
a hearing, the court granted the defendant's motion to dismiss the initial
petition, concluding, without elaboration, that it did not satisfy the
requirements of § 46b-59. The court also dismissed, sua sponte, the
amended petition, concluding that its allegations, if proven by clear
and convincing evidence, would not establish the plaintiff's parent-like
relationship with L or establish that L would suffer real and significant
harm if visitation were to be denied. Thereafter, the plaintiff appealed
from the trial court's judgment.

*Held* that the trial court improperly dismissed the plaintiff's amended petition
for visitation with L, the plaintiff having adequately alleged therein both
the existence of a parent-like relationship and that the denial of visitation
would cause L real and significant harm, and, accordingly, this court
reversed the trial court's judgment and remanded the case for further
proceedings:

1. The trial court improperly treated the defendant's motion to dismiss as implicating the court's subject matter jurisdiction rather than its statutory authority to act pursuant to § 46b-59:

In *Roth* v. *Weston* (259 Conn. 202), this court applied a judicial gloss to a prior version of § 46b-59 to render the statute constitutional and, in doing so, concluded that the parent-like relationship and the real and significant harm requirements were matters of standing that implicated the court's subject matter jurisdiction, but the legislature's subsequent amendment (P.A. 12-137, § 1) to § 46b-59, in accordance with the gloss adopted in *Roth*, created a new statute that carried with it a strong presumption of constitutionality such that the statute no longer required a gloss to function within the bounds of the constitution.

The trial court has plenary and general subject matter jurisdiction over legal disputes in family relations matters pursuant to statute (§ 46b-1), § 46b-1 (a) (12) defines family relations matters to include matters affecting or involving rights and remedies provided for in chapter 815j of the General Statutes, § 46b-59 falls within chapter 815j and expressly provides the court with the power to order visitation to any person who meets the statutory standard, and, accordingly, §§ 46b-1 and 46b-59 together provided the trial court in the present case with subject matter jurisdiction over the plaintiff's third-party visitation petitions.

Because the motion to dismiss implicated the trial court's statutory authority to act pursuant to § 46b-59 rather than its subject matter jurisdiction, this court treated that motion as raising the question of whether the plaintiff had sufficiently proffered specific and good faith allegations that both a parent-like relationship existed between her and L and that the denial of visitation would cause real and significant harm to L.

2. Because the trial court should have allowed the plaintiff to amend her initial petition for visitation, and because the trial court considered the plaintiff's amended petition, it was permissible for this court to consider the allegations therein to determine whether the trial court properly had declined to exercise its statutory authority under § 46b-59:

The defendant's objection to the plaintiff's amended petition was premised on his claim that the plaintiff had failed to comply with the rule of practice (§ 10-60) governing amendments to pleadings in civil matters, but visitation is governed by the less restrictive rule of practice (§ 25-7) pertaining to amendments to pleadings in family matters, and, because the trial court should have allowed the plaintiff to amend her initial petition under the more liberal provision of Practice Book § 25-7, and the trial court actually considered the amended petition, this court also considered the amended petition to determine whether the plaintiff pleaded sufficient facts to demonstrate that she had a parent-like relationship with L and that L would suffer real and significant harm if visitation were to be denied.

3. The trial court incorrectly concluded that the amended petition did not include the specific and good faith allegations necessary to demonstrate the existence of the plaintiff's parent-like relationship with L and that L would suffer real and significant harm if visitation were to be denied:

With respect to the parent-like relationship requirement, the plaintiff alleged, inter alia, that she lived with L for more than ten years, was L's primary caretaker, and was involved in every aspect of L's day, including transporting L to school, assisting L with homework, enrolling L in extracurricular activities, and taking L to medical appointments, and that, after the death of L's mother, she served as L's primary provider of emotional support, comfort, and care, and those allegations establishing the duration, regularity, and magnitude of the care that the plaintiff provided to L were sufficient to plead a parent-like relationship pursuant to § 46b-59 (b) and (c).

This court emphasized that the parent-like relationship and real and significant harm requirements should be analyzed separately and that the severance of emotional ties between a nonparent who has developed a parent-like relationship and a child, without more, should not be the end of the analysis with respect to the harm requirement, but it also recognized that there may be circumstances, such as when a child is coping with the death of a parent in addition to the severance of substantial emotional ties with a nonparent, that the denial of visitation with the nonparent itself could cause serious and immediate harm to that child.

With respect to the real and significant harm requirement, the plaintiff alleged, inter alia, that she was L's primary caretaker and provider of emotional support, that L was abruptly taken away from her home and had been very emotional since she was cut off from her former life, that L was very sad, anxious, fearful, crying excessively, experiencing suicidal ideation, and losing weight, and that the defendant's actions compounded the emotional harm that he caused to L by depriving her of a relationship with the plaintiff, and those allegations were more than sufficiently specific to satisfy the statutory pleading requirement by demonstrating that L was suffering significant emotional harm, manifesting itself through her conduct, statements, and physical symptoms, as a result of the deprivation of her relationship with the plaintiff.

*Igersheim* v. *Bezrutczyk* (197 Conn. App. 412), to the extent that it held that it is improper for a trial court to consider an amended third-party visitation petition that is filed during the pendency of a motion to dismiss the initial third-party visitation petition, overruled.

Argued October 26, 2023—officially released April 16, 2024

*Procedural History*

Petition for third-party visitation with the defendant's minor child, brought to the Superior Court in the judicial

district of Fairfield, where the court, *Truglia, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed. *Reversed*; *further proceedings*.

*Samuel V. Schoonmaker IV*, with whom were *Thomas A. Esposito* and *Clifford C. Garnett*, for the appellant (plaintiff).

*Bruce W. Diamond*, for the appellee (defendant).

*Opinion*

ROBINSON, C. J. This appeal requires us to consider the jurisdictional effects of the 2012 amendments to the third-party visitation statute, General Statutes § 46b-59 (b); see Public Acts 2012, No. 12-137, § 1; on the judicial gloss articulated in *Roth* v. *Weston*, 259 Conn. 202, 234–35, 789 A.2d 431 (2002), which imposed "high jurisdictional hurdles" that individuals petitioning for third-party visitation with a minor child must overcome. The plaintiff, Laurie Hepburn, appeals[1] from the judgment of the trial court dismissing her amended verified petition for third-party visitation (amended petition) with her niece, L, who is the biological child of the defendant, Chandler Brill. On appeal, the plaintiff contends that the trial court improperly treated the defendant's motion to dismiss as presenting a question of subject matter jurisdiction rather than the court's statutory authority to act pursuant to § 46b-59. The plaintiff also contends that the trial court incorrectly determined that the amended petition failed to include the specific and good faith allegations necessary to demonstrate that (1) she had a parent-like relationship with L, and (2) L would suffer real and significant harm if visitation were to be denied. We agree with the plaintiff and conclude that, given the Superior Court's plenary jurisdic-

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

tion over family relations matters under General Statutes § 46b-1; see, e.g., *Sousa* v. *Sousa*, 322 Conn. 757, 776–77, 143 A.3d 578 (2016); and the 2012 amendments to § 46b-59 (b), the trial court incorrectly determined that it lacked subject matter jurisdiction under *Roth*. We also conclude that the amended petition alleges facts sufficient to warrant an evidentiary hearing under § 46b-59. Accordingly, we reverse the trial court's judgment dismissing the plaintiff's amended petition.

The record reveals the following factual allegations asserted by the plaintiff, which we construe in her favor,[2] and procedural history. The subject of this visitation action is the plaintiff's niece, L, who was born in December, 2010. From the time of her birth until September, 2021, L lived with her mother, Hallie Hepburn, her grandmother, Patricia Hepburn, and Hallie's sister, the plaintiff. The defendant, who is L's biological father, would regularly visit L at the home L shared with Hallie, Patricia, and the plaintiff, but the defendant and L would have only about one visit per year outside of the home.

In 2015, Patricia suffered a stroke, and Hallie became her primary caretaker. Because Hallie was focused on taking care of Patricia, at this time, the plaintiff became increasingly responsible for L, acting as her parent by serving as her primary caretaker and provider of emotional support. Specifically, Hallie and the plaintiff shared the responsibility of transporting L to school, assisting with her homework, taking her to medical appointments, and engaging in recreational activities with her, among other tasks. The plaintiff was involved

---

[2] See, e.g., *Burton* v. *Dominion Nuclear Connecticut, Inc.*, 300 Conn. 542, 550, 23 A.3d 1176 (2011) ("[i]n ruling [on] whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader" (internal quotation marks omitted)).

in all aspects of L's day; she woke her up in the morning, provided her with meals, and got her ready for bed. L looked to the plaintiff for comfort and support by, for example, talking to the plaintiff about school issues and her feelings.

In September, 2021, Patricia died, and, two days later, Hallie died by suicide. L looked to the plaintiff for comfort and support during that difficult time, while continuing to live in the same house with the plaintiff. The defendant, who had been living in Massachusetts, eventually moved to Connecticut and started taking L to live with him on the weekends. In November, 2021, the defendant revoked the plaintiff's privileges to pick up L from school and took L to live with him full-time. After unsuccessfully attempting to arrange a visitation schedule with the defendant, the plaintiff filed in the Northern Fairfield County Probate Court (Probate Court) petitions for emergency temporary custody of L, temporary custody of L, removal of the defendant as L's guardian, and her appointment as L's permanent guardian. The Probate Court denied the plaintiff's motion for emergency custody, and the plaintiff subsequently withdrew the remaining petitions. On July 18, 2022, the plaintiff commenced the present third-party visitation action by filing her initial verified petition for visitation (initial petition) with the trial court.

The defendant, who had relocated back to Massachusetts with L, moved to dismiss the initial petition for lack of personal jurisdiction. When the parties subsequently appeared before the trial court for an evidentiary hearing, that hearing did not go forward. Instead, counsel for the parties met with the court in chambers. During that meeting, the court questioned on its own whether the plaintiff had included sufficient facts in the initial petition to vest the court with subject matter jurisdiction pursuant to § 46b-59 (b). At the conclusion of the meeting in chambers, the plaintiff's counsel indicated

that he would file an amended petition. The court did not issue an order with respect to the permissibility of amending the initial petition.

Following the meeting, on October 6, 2022, the defendant filed a second motion to dismiss, claiming that the plaintiff lacked standing under § 46b-59 (b) because the initial petition failed to allege sufficient facts to establish both that she had a parent-like relationship with L and that L would suffer real and significant harm if visitation were to be denied. The following day, the plaintiff filed the amended petition, which alleged additional facts with respect to the plaintiff's parent-like relationship with L and the harm caused by the lack of visitation. The amended petition included additional factual allegations arising from thirteen video calls between the plaintiff and L, which occurred between December, 2021, and February, 2022, prior to the filing of the initial petition. The plaintiff described L as appearing "very stressed and very upset" during the video calls and alleged that L "was desperate to come home and didn't understand why it was taking so long." During one call, L stated that "she was very dizzy, could barely walk . . . [had] a headache," and had vomited several times. During another call, L said that, if it was not for the plaintiff, her friends, and school, "there would be 'no point in living because [she would] just be miserable with [the defendant].' " L further stated that she could not cry in front of the defendant because he would mock her and swear at her. L "said that, when she [would cry] about [her] mom, [the defendant would tell] her to stop whining." During later video calls, the plaintiff alleged that L "appeared exhausted, pale, and so very sad," and that L had stated that she was "not feeling strong anymore" and had "lost eight pounds." In February, 2022, the defendant ended the plaintiff's video access to L.

Subsequently, in July, 2022, the plaintiff received a phone call from L in the middle of the night, during which L sounded sad, depressed, and anxious. L made several statements during that call that caused the plaintiff great concern with respect to L's mental and emotional well-being. L told the plaintiff that (1) "she sleeps on the floor every night and prays to her mother in heaven to be her guardian angel and [to] get her out of this situation living with [the defendant]," (2) "she often cries herself to sleep," (3) "she is devastated about being cut off from [the plaintiff]," (4) "she desperately wanted to return home to live with [the plaintiff], as she always did," (5) "people think she is fine because she goes to school and looks fine, but she is not fine on the inside," (6) the defendant yells and swears at her "all the time" and "completely ignores her feelings," (7) the defendant "shoved her up against his car" and screamed "the f-word at her," (8) "she constantly tells [the defendant] that she wants to go home," (9) she is " 'not doing well' " and does not want to live with the defendant, (10) "she wants to get away from [the defendant] and then [to] get a restraining order against him because she is scared of him," (11) "her worst fear was staying with [the defendant] and going to school in Massachusetts," and (12) the defendant "is an awful person and a terrible parent," and she " 'never want[s] to see him again because of what he has done to [her].' " The plaintiff further alleged in the amended petition that L "lost three major live-in, daily relationships and two attachment figures within one year. She has now lost her childhood home, her school, friends, providers, and more." Finally, the plaintiff contends that she is "the only connection [L] currently has to her mother and her entire childhood before her mother died. Even though [the defendant] is aware of [L's] critical emotional needs and the psychological necessity of continuing [their] relationship, he continues to refuse access

or contact of any kind. Even more concerning, [L] is reporting that [the defendant] is emotionally insensitive, dismissive, neglectful, and even outright abusive.''

The defendant filed an objection to the amended petition, arguing that, under Appellate Court case law, it would be improper for the court to consider the amended petition while a motion to dismiss for lack of subject matter jurisdiction is pending, even if that amended petition purports to cure the alleged jurisdictional defect. See *Igersheim* v. *Bezrutczyk*, 197 Conn. App. 412, 420, 231 A.3d 1276 (2020); *Fennelly* v. *Norton*, 103 Conn. App. 125, 137–39, 931 A.2d 269, cert. denied, 284 Conn. 918, 931 A.2d 936 (2007).

Following a hearing, the trial court issued a memorandum of decision, granted the defendant's motion to dismiss the initial petition, and dismissed the amended petition on its own. With respect to the initial petition, the trial court concluded, without elaboration, that it "did not satisfy the requirements of . . . § 46b-59 . . . .'' With respect to the amended petition, the trial court determined that (1) "[t]he allegations, if proven by clear and convincing evidence at trial, would establish that the plaintiff assisted [Hallie] in caring for [L]'' but "would not establish that a [parent-like] relationship presently exists between the plaintiff and [L],'' and (2) the allegations did "not set forth specific facts from which the court [could] conclude that denying the plaintiff access and visitation [would] cause [L] to be neglected, uncared for, mistreated, or harmed in some way.'' This appeal followed.

On appeal, the plaintiff claims that the trial court improperly dismissed both of her petitions for third-party visitation. Relying on, for example, *Amodio* v. *Amodio*, 247 Conn. 724, 729–30, 724 A.2d 1084 (1999), the plaintiff claims that the trial court has "plenary and general subject matter jurisdiction" over petitions for

third-party visitation because they are "family relations matters," as defined by § 46b-1; according to the plaintiff, this means that the defendant's motion to dismiss concerned the trial court's statutory authority to act pursuant to § 46b-59, rather than the plaintiff's standing as a jurisdictional matter. See Practice Book § 25-1 (defining "family matters" for purpose of rules of practice).[3] With respect to the merits of the trial court's authority to act, the plaintiff argues that the trial court incorrectly determined that her allegations in both the initial petition and the amended petition concerning a parent-like relationship, when interpreted in the light most favorable to her, demonstrate only that she merely assisted L's mother in caring for L. The plaintiff further contends that her allegations of specific instances of neglect, coercive control, and failure to care for L support the statutory element of real and significant harm. Accordingly, the plaintiff argues that the allegations in both her initial petition and her amended petition are sufficient to satisfy the pleading requirements of § 46b-59 (b) and that we should remand this case for an evidentiary hearing on its merits.

In response, the defendant relies on *Roth* v. *Weston,* supra, 259 Conn. 202, and *DiGiovanna* v. *St. George,*

---

[3] Practice Book § 25-1 provides: "The following shall be 'family matters' within the scope of these rules: Any actions brought pursuant to General Statutes § 46b-1, including, but not limited to, dissolution of marriage or civil union, legal separation, dissolution of marriage or civil union after legal separation, annulment of marriage or civil union, alimony, support, custody, and change of name incident to dissolution of marriage or civil union, habeas corpus and *other proceedings to determine the custody and visitation of children* except those which are properly filed in the Superior Court as juvenile matters, the establishing of paternity, enforcement of foreign matrimonial or civil union judgments, actions related to prenuptial or pre-civil union and separation agreements and to matrimonial or civil union decrees of a foreign jurisdiction, actions brought pursuant to General Statutes § 46b-15, custody proceedings brought under the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act and proceedings for enforcement of support brought under the provisions of the Uniform Interstate Family Support Act." (Emphasis added.)

300 Conn. 59, 12 A.3d 900 (2011), to contend that "[a] consistent body of appellate case law makes it clear that the issue . . . before this court is one of subject matter jurisdiction" and, therefore, that "the trial court did not err in dismissing the petition." Relying further on the Appellate Court's decisions in *Igersheim* v. *Bez-rutcyzk*, supra, 197 Conn. App. 420, and *Fennelly* v. *Norton*, supra, 103 Conn. App. 137–39, the defendant contends that, because he moved to dismiss the initial petition for lack of subject matter jurisdiction, the court is limited to considering the allegations of the initial petition. He argues that the plaintiff's allegations in the initial petition, even when interpreted in the light most favorable to her, establish only that visitation might be in L's best interest or simply beneficial to her, which does not meet the requirements of § 46b-59 (b). The defendant also argues that, even if we were to consider the allegations in the amended petition in deciding this appeal, those allegations also fail to meet the statute's threshold requirements, and that having to continue to defend against either petition violates his parental rights as guaranteed by the due process clause of the fourteenth amendment to the United States constitution. We agree with the plaintiff and conclude that the trial court improperly dismissed this case because it had subject matter jurisdiction under § 46b-1 and that the allegations in the amended petition are sufficient to confer statutory authority to act under § 46b-59 (b).

The plaintiff's claims in this appeal, which concern the interpretation of pleadings and whether the trial court has subject matter jurisdiction or statutory authority to act under the statutory scheme governing petitions for third-party visitation, present a question of law over which our review is plenary. See, e.g., *Carpenter* v. *Daar*, 346 Conn. 80, 128, 287 A.3d 1027 (2023); *Reinke* v. *Sing*, 328 Conn. 376, 382, 179 A.3d 769 (2018); *DiGiovanna* v. *St. George*, supra, 300 Conn. 70.

We begin our analysis by recognizing that, "[w]henever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed [on] before it can move one further step in the cause . . . as any movement is necessarily the exercise of jurisdiction." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Peabody N.E., Inc.*, 239 Conn. 93, 99, 680 A.2d 1321 (1996). Because it affects whether we should consider the plaintiff's initial petition or her amended petition in determining whether her allegations are sufficient to meet the pleading standard set forth in § 46b-59, we must first consider the distinction between a trial court's subject matter jurisdiction and its authority to act pursuant to a particular statute. "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, supra, 247 Conn. 727–28; accord *Reinke* v. *Sing*, supra, 328 Conn. 389.

Our jurisdictional analysis is informed by a review of the constitutional principles governing petitions for third-party visitation, which reflect "the status of parents' interest in the care, custody and control of their children" as being "perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." (Internal quotation marks omitted.) *Roth* v. *Weston*, supra, 259 Conn. 216. When a parent

is fit, "there will normally be no reason for the [s]tate to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel* v. *Granville*, 530 U.S. 57, 68–69, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). "The essence of parenthood is the companionship of the child and the right to make decisions regarding [that child's] care, control, education, health, religion and *association*." (Emphasis added.) *Roth* v. *Weston*, supra, 216–17. This court also recognized in *Roth*, however, "that there are circumstances in which interests arise that outweigh the parents' fundamental right to make decisions relating to their child." *DiGiovanna* v. *St. George*, supra, 300 Conn. 71. One such limitation occurs when otherwise fit parents deny their child "access to an individual who has a parent-like relationship with the child" and the "decision regarding visitation will cause the child to suffer real and substantial emotional harm . . . . Under such circumstances, the state has a compelling interest in protecting the child's own complementary interest in preserving [parent-like] relationships that serve [the child's] welfare by avoiding the serious and immediate harm to [the] child that would result from the parent's decision to terminate or impair the child's relationship with the third party." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Boisvert* v. *Gavis*, 332 Conn. 115, 133, 210 A.3d 1 (2019).

This constitutional limitation, which allows courts to grant visitation rights to grandparents and other third parties, is statutorily implemented in Connecticut by § 46b-59. See id., 134. This court's 2002 decision in *Roth* considered the constitutionality of Connecticut's then governing third-party visitation statute in light of the United States Supreme Court's then recent decision in *Troxel* v. *Granville*, supra, 530 U.S. 57. See *Roth* v. *Weston*, supra, 259 Conn. 209–35. In *Roth*, this court

held that the statute was "unconstitutional as applied to the extent that the trial court . . . permitted [third-party] visitation contrary to the desires of a fit parent and in the absence of any allegation and proof by clear and convincing evidence that the children would suffer actual, significant harm if deprived of the visitation." Id., 205–206. To save the statute, this court applied a judicial gloss and concluded that, "*to have jurisdiction* over a petition for visitation contrary to the wishes of a fit parent . . . the petition must contain specific, good faith allegations that the petitioner has a relationship with the child that is similar in nature to a parent-child relationship. The petition must also contain specific, good faith allegations that denial of the visitation will cause real and significant harm to the child. . . . [T]hat degree of harm requires more than a determination that visitation would be in the child's best interest. It must be a degree of harm analogous to the kind of harm contemplated by [General Statutes] §§ 46b-120 and 46b-129, namely, that the child is 'neglected, uncared-for or dependent.' The degree of specificity of the allegations must be sufficient to justify requiring the fit parent[s] to subject [their] parental judgment to unwanted litigation. Only if these specific, good faith allegations are made *will a court have jurisdiction* over the petition." (Emphasis added.) Id., 234–35. In concluding that the matters addressed in the judicial gloss in *Roth* implicated the court's subject matter jurisdiction, this court followed its then recent decision in *Castagno* v. *Wholean*, 239 Conn. 336, 338–40, 684 A.2d 1181 (1996), before casting the judicial gloss as a matter of standing.[4] See *Roth* v. *Weston,* supra, 209–19.

---

[4] Approximately five years prior to *Roth*, in *Castagno* v. *Wholean*, supra, 239 Conn. 336, this court "recognized that a literal reading would place [§ 46b-59] in constitutional jeopardy because of the protection traditionally afforded to a parent's right to family integrity . . . ." *Roth* v. *Weston*, supra, 259 Conn. 210. In order to save the statute, this court applied a judicial gloss that incorporated a threshold requirement "that plaintiffs must demonstrate disruption of the family sufficient to justify state intervention." *Castagno* v. *Wholean*, supra, 338. Because the plaintiffs in *Castagno* did not satisfy

In 2012, the legislature enacted Public Acts 2012, No. 12-137, § 1, which amended § 46b-59 in accordance with the judicial gloss articulated in *Roth*. See *Boisvert* v. *Gavis*, supra, 332 Conn. 134. Subsection (b) of the amended statute requires that "a verified petition," which may be filed by any person, "include specific and good-faith allegations that (1) a parent-like relationship exists between the person and the minor child, and (2) denial of visitation would cause real and significant harm." General Statutes § 46b-59 (b). "In determining whether a parent-like relationship exists between the person and the minor child, the Superior Court may consider, but shall not be limited to, the following factors: (1) The existence and length of a relationship between the person and the minor child prior to the submission of a petition pursuant to this section; (2) [t]he length of time that the relationship between the person and the minor child has been disrupted; (3) [t]he specific parent-like activities of the person seeking visitation toward the minor child; (4) [a]ny evidence that the person seeking visitation has unreasonably undermined the authority and discretion of the custodial parent; (5) [t]he

the threshold requirement, this court concluded that "the trial court lacked jurisdiction to decide the issue of visitation . . . ." Id. We note that this court framed its analysis in *Castagno* as a matter of subject matter jurisdiction, which was consistent with the arguments of the parties in that case both before the trial court and on appeal; it did not at all question whether the parties' claims actually presented a question of subject matter jurisdiction, rather than the court's authority to act. See id., 338–39, 352; see also id., 338 n.2 (observing that it was undisputed that "a motion to dismiss was the proper procedure in [*Castagno*, in which] the issue [was] whether, under *any* circumstance, *any* third party can satisfy the requirements of § 46b-59" (emphasis in original)).

This court subsequently concluded in *Roth*, however, that "the threshold requirement articulated in *Castagno* fail[ed] to protect adequately the fundamental right to rear one's child and the right to family privacy." *Roth* v. *Weston*, supra, 259 Conn. 217. Accordingly, in *Roth*, this court overruled *Castagno* to that limited extent, but we did not question or disturb the aspects of *Castagno* describing the requirements of § 46b-59 as subject matter jurisdictional in nature. See id.

significant absence of a parent from the life of a minor child; (6) [t]he death of one of the minor child's parents; (7) [t]he physical separation of the parents of the minor child; (8) [t]he fitness of the person seeking visitation; and (9) [t]he fitness of the custodial parent." General Statutes § 46b-59 (c). With respect to the second prong of the pleading requirement, subsection (a) (2) provides that " '[r]eal and significant harm' means that the minor child is neglected, as defined in section 46b-120, or uncared for, as defined in said section." General Statutes § 46b-59 (a) (2). "A child may be found 'neglected' who . . . is being denied proper care and attention, physically, educationally, emotionally or morally . . . ." General Statutes § 46b-120 (4) (B). "A child may be found 'uncared for' . . . whose home cannot provide the specialized care that the physical, emotional or mental condition of the child requires . . . ." General Statutes § 46b-120 (6) (B).

With these principles in mind, we examine the source of the court's jurisdiction to issue third-party visitation orders in order to determine whether the trial court properly treated the motion to dismiss in this case as implicating its subject matter jurisdiction. Section 46b-1 provides the Superior Court "with plenary and general subject matter jurisdiction over legal disputes in family relations matters . . . ." (Internal quotation marks omitted.) *Reinke* v. *Sing*, supra, 328 Conn. 389. Family relations matters are "matters affecting or involving," among other things, "all rights and remedies provided for in chapter 815j . . . ." General Statutes § 46b-1 (a) (12). Section 46b-59, which falls within chapter 815j, expressly provides the court with the power to order visitation to "any person" who meets the statutory standard. General Statutes § 46b-59 (b). We conclude that these two statutes provide the trial court with subject matter jurisdiction over the third-party visitation petitions in the present case. See *Reinke* v. *Sing*, supra,

390 (concluding that trial court had subject matter jurisdiction over claim seeking modification of dissolution agreement because trial court has plenary and general subject matter jurisdiction over dissolution actions pursuant to § 46b-1, with authority to "assign to either spouse all or any part of the [marital] estate" under General Statutes § 46b-81 (a)); *Sousa* v. *Sousa*, supra, 322 Conn. 760–61 (concluding that it was not " 'entirely obvious' " that trial court lacked subject matter jurisdiction to modify property distribution in dissolution of marriage judgment "given a conflict in the case law . . . and *the Superior Court's plenary jurisdiction over family relations matters*" (emphasis added)); *Amodio* v. *Amodio*, supra, 247 Conn. 729–30 (concluding that General Statutes §§ 46b-1 (c) and 46b-86 (a) together provide trial court with subject matter jurisdiction over modification claim).

Describing it as a matter of standing, this court applied a judicial gloss in *Roth* to allow § 46b-59 "to continue to function within the bounds of the constitution." *Roth* v. *Weston*, supra, 259 Conn. 233. By amending the statute to include the parent-like relationship and real and significant harm requirements, however, the legislature created a new statute that "carries with it a strong presumption of constitutionality . . . ." (Internal quotation marks omitted.) *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 405, 119 A.3d 462 (2015). With no challenge to the constitutionality of the amended § 46b-59 in light of the due process principles explained in *Troxel* v. *Granville*, supra, 530 U.S. 57, the statute no longer requires a gloss to function within the bounds of the constitution. If the legislature had intended these requirements to implicate the court's subject matter jurisdiction, it knew how to do so. See, e.g., *Stafford* v. *Roadway*, 312 Conn. 184, 194, 93 A.3d 1058 (2014) ("[i]t is a well settled principle of statutory construction that the legislature knows how to convey

its intent expressly" (internal quotation marks omitted)); *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 779, 900 A.2d 1 (2006) ("[w]e . . . require a clear showing of legislative intent that a failure to comply with a particular statutory requirement deprives the court of subject matter jurisdiction"); *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 269–70, 777 A.2d 645 (2001) (acknowledging that, although "mandatory language may be an indication that the legislature intended a . . . requirement to be jurisdictional, such language alone does not overcome the strong presumption of jurisdiction, nor does such language alone prove strong legislative intent to create a jurisdictional bar"). In the absence of any indication that the legislature intended these requirements to implicate the court's subject matter jurisdiction, they serve only to guide the exercise of the court's authority in a manner that protects the constitutional due process rights of fit parents to make decisions concerning the rearing of their children.

Put differently, this "authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, supra, 247 Conn. 728. "As we have stated, the trial court unquestionably has the power to hear and determine [third-party visitation matters]. With subject matter jurisdiction established, the trial court's task is to apply the statute to the facts of a particular case; indeed, interpreting statutes and applying the law to the facts before it [fall within] the traditional province of the trial court." (Internal quotation marks omitted.) *Reinke* v. *Sing*, supra, 328 Conn. 390. Accordingly, we conclude that the trial court has subject matter jurisdiction over the plain-

tiff's petition for third-party visitation in the present case. We will therefore treat the motion to dismiss as raising the question of whether the plaintiff has sufficiently alleged specific and good faith facts that both (1) a parent-like relationship exists between her and L, and (2) denial of visitation would cause real and significant harm, as specifically defined in the statute.[5] See General Statutes § 46b-59 (a) (2).

Before we consider whether the trial court properly declined to exercise its statutory authority under § 46b-59, we must determine whether it is permissible to consider the amended petition or if we must, as the defendant contends, consider only the initial petition to determine if the plaintiff pleaded sufficient facts to demonstrate that (1) the plaintiff had a parent-like relationship with L, and (2) L would suffer real and significant harm if visitation was denied. The trial court determined that the Appellate Court's decision in *Igersheim* v. *Bezrutczyk*, supra, 197 Conn. App. 420, precluded it from considering the amended petition during the pendency of the defendant's motion to dismiss the initial petition for lack of subject matter jurisdiction. Nevertheless, the trial court considered the allegations in the amended petition out of concern for fairness to the plaintiff. In *Igersheim*, the Appellate Court concluded that it was improper for the trial court to consider an amended petition filed during the pendency of a motion to dismiss an initial petition for third-party visitation. See id., 419–

[5] Given our jurisdictional conclusion, we note that the proper vehicle to challenge the sufficiency of the allegations for third-party visitation would be a motion to strike under Practice Book § 25-16. We further note that, although not jurisdictional in nature, the "specific and good-faith allegations" required by § 46b-59 (b) remain a "necessary [safeguard] to prevent families from having to defend against unjustified petitions for visitation" in the first instance. *Roth* v. *Weston*, supra, 259 Conn. 222. In cases in which pleadings are insufficient to meet that standard, an evidentiary hearing should not be held.

20. In concluding that it was required to consider only the initial verified petition for visitation, the Appellate Court, consistent with this court's decision in *Roth*, treated the statutory requirements of a parent-like relationship and harm to the child as jurisdictional under § 46b-59 (b). See id., 416 ("[t]he statutory *jurisdictional requirements* relevant to [*Igersheim*] are prescribed in . . . § 46b-59, the third-party visitation statute" (emphasis added; footnote omitted)). The Appellate Court cited this court's decisions in *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, supra, 239 Conn. 99, and *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991), for the proposition that it would be improper to consider an amended petition during the pendency of a motion to dismiss an initial petition for lack of subject matter jurisdiction. See *Igersheim* v. *Bezrutczyk*, supra, 420.

Given our conclusion that the amended statutory requirements presently set forth in § 46b-59 (b) do not implicate the court's subject matter jurisdiction, we overrule the Appellate Court's decision in *Igersheim*. Although the defendant's objection to the consideration of the amended complaint in this case was grounded on his claim that the plaintiff had failed to comply with Practice Book § 10-60,[6] which is the rule of practice governing amendments to pleadings in civil matters, that rule of practice does not apply in this case. Rather, because visitation is a "family matter" governed by chapter 25 of the rules of practice, the trial court should follow those provisions, rather than chapter 10, which applies to civil matters generally, with respect to amending a petition for third-party visitation. See Prac-

---

[6] Practice Book § 10-60 (a) provides in relevant part: "[A] party may amend his or her pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section in the following manner: (1) By order of judicial authority; or (2) By written consent of the adverse party; or (3) By filing a request for leave to file an amendment together with the amended pleading or other parts of the record or proceedings. . . ."

tice Book § 25-1 (providing that "[a]ny actions brought
pursuant to . . . § 46b-1" are "family matters" under
rules of practice). Specifically, Practice Book § 25-4
requires that "[e]very application or verified petition in
an action for visitation of a minor child . . . state the
name and date of birth of such minor child or children,
the names of the parents and legal guardian of such
minor child or children, and the facts necessary to give
the court jurisdiction."[7] In contrast to the more restric-
tive civil rule of Practice Book § 10-60, Practice Book
§ 25-7, which governs amendments to pleadings in fam-
ily matters, provides in relevant part that, "[i]f . . .
[Practice Book §] 25-4 is not complied with, the judicial
authority, *whenever its attention is called to the matter*,
shall order that the complaint or the application, as
the case may be, be amended upon such terms and
conditions as it may direct. . . ." (Emphasis added.)
Because the trial court should have allowed the plaintiff
to amend the petition under the more liberal provision
of Practice Book § 25-7, and the plaintiff has indeed
amended the petition and the trial court has considered
it, we, too, will consider the plaintiff's amended petition.

We now turn to whether the amended petition
includes the specific and good faith allegations neces-
sary to demonstrate, as required by § 46b-59, that (1)
the plaintiff had a parent-like relationship with L, and
(2) L would suffer real and significant harm if visitation
was denied. It is well established that the "interpreta-

---

[7] Given our conclusion that the statutory requirements in § 46b-59 (b) are
not a jurisdictional threshold, we observe that the text of Practice Book
§ 25-4 with respect to the court's jurisdiction would benefit from the attention
of the Rules Committee of the Superior Court to render it consistent with
the doctrinal changes discussed in this opinion. See, e.g., *Rules Committee
of the Superior Court* v. *Freedom of Information Commission*, 192 Conn.
234, 237, 472 A.2d 9 (1984) (noting that "[the] function [of the Rules Commit-
tee of the Superior Court] is to consider proposed changes in the rules of
practice for the Superior Court, and to recommend amendments to the
Practice Book").

tion of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . Furthermore, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. *Rather,* [*t*]*he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically.* . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory [on] which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Emphasis in original; internal quotation marks omitted.) *Carpenter* v. *Daar,* supra, 346 Conn. 128.

Guided by the Appellate Court's decision in *Jeanette-Blethen* v. *Jeanette-Blethen,* 172 Conn. App. 98, 159 A.3d 236 (2017), we first conclude that the amended petition adequately alleges the existence of care provided with sufficient duration, regularity, and magnitude to establish a parent-like relationship between the plaintiff and L, as that term is defined by § 46b-59 (c). In *Jeanette-Blethen,* the Appellate Court upheld the trial court's finding that a parent-like relationship existed in granting a grandmother's motion to intervene, pursuant to § 46b-59, in a custody modification proceeding. See id., 99. In concluding that the trial court's finding was not clearly erroneous, the Appellate Court observed that the children had lived with the grandparents for six years, during which time "the grandparents provided care for the children, including . . . preparing their meals, bathing them, getting them ready for school, caring for them when they were sick, and transporting them to [health-

care] appointments." Id., 100; see id., 102–103. The trial court additionally "found that the grandparents 'provided a constant example of strength, discipline, sacrifice, stability, and unconditional love on which [the children] . . . could rely.' " Id., 100; see also *Boisvert* v. *Gavis*, Superior Court, judicial district of Windham, Docket No. WWM-FA-16-6010965-S (August 11, 2017) (65 Conn. L. Rptr. 81, 82, 84) (finding existence of parent-like relationship when grandmother provided various types of care, including feeding child, transporting child to day care, as well as school and doctor appointments, and taking child on day trips and on vacation), aff'd, 332 Conn. 115, 210 A.3d 1 (2019); *Germano* v. *Germano-Delorfano*, Docket No. HHD-FA-12-4064585-S, 2014 WL 1647094, *2, *7 (Conn. Super. March 26, 2014) (finding existence of parent-like relationship when child resided with plaintiffs for majority of first ten years of her life, and plaintiffs provided "regular daily care," including feeding her, finding educational programs for her, enrolling her in activities, and transporting her).

In the present case, the plaintiff alleges that (1) she lived with L for more than ten years, (2) she was L's primary caretaker and was involved in every aspect of L's day, from waking her up in the morning to getting her ready for bed at night, (3) she shared the responsibility of transporting L to school, assisting with her homework, enrolling her in extracurricular activities, and taking her to medical appointments, and (4) after Patricia's stroke, she provided comfort and support to L as L's primary giver of emotional support and care. Indeed, the petition alleges that, for all practical purposes, the plaintiff acted as a co-parent of L while Hallie was alive and was, perhaps, L's most attentive parent following Patricia's stroke. When construed in the light most favorable to the plaintiff, the allegations establishing the duration, regularity, and magnitude of the care that the plaintiff provided to L, which are akin to those found

proven by clear and convincing evidence in *Jeanette-Blethen*, are sufficient to plead a parent-like relationship pursuant to § 46b-59 (b) and (c). Accordingly, we conclude that the plaintiff alleged facts sufficient to demonstrate that a parent-like relationship exists between her and L.

We next consider whether the amended petition contains specific, good faith allegations to establish that the denial of visitation would cause L real and significant harm, namely, that L "is being denied proper care and attention, physically, educationally, emotionally or morally . . . ." General Statutes § 46b-120 (4) (B). We conclude that it does. However, before examining the harm caused to L, we emphasize that it is important to analyze the two prongs of the threshold requirements separately. Although severance of the emotional ties between a nonparent and a child who have developed a parent-like relationship, without more, should not be the end of the analysis with respect to the harm prong, in *Roth*, this court concluded that there could be "circumstances in which a nonparent and a child have developed such substantial emotional ties that the denial of visitation could cause serious and immediate harm to that child." *Roth* v. *Weston*, supra, 259 Conn. 225; see also, e.g., *In re Marriage of Howard*, 661 N.W.2d 183, 191 (Iowa 2003) ("when a grandparent has established a substantial relationship with a grandchild, as required under [the Iowa] statute, an emotional bond can be created that, if severed, can inflict harm on the child"); *Blixt* v. *Blixt*, 437 Mass. 649, 664, 774 N.E.2d 1052 (2002) (observing that bond between grandparent and grandchild may "become crucial to the child's physical or emotional security" and that state "intervention may be necessary to secure the child's well-being from traumatic separation from the grandparent"), cert. denied, 537 U.S. 1189, 123 S. Ct. 1259, 154 L. Ed. 2d 1022 (2003); *Moriarty* v. *Bradt*, 177 N.J. 84, 117, 827 A.2d 203 (2003)

("the termination of a long-standing relationship between the grandparents and the child . . . [can] form the basis for a finding of harm"), cert. denied, 540 U.S. 1177, 124 S. Ct. 1408, 158 L. Ed. 2d 78 (2004).

It may be sufficient, however, when, as in the present case, the child is coping with the death of a parent in addition to the severance of substantial emotional ties with a nonparent.[8] For example, in *In re Estate of S.T.T.*, 144 P.3d 1083, 1095–96 (Utah 2006), the Supreme Court of Utah upheld an order of third-party visitation, concluding that the loss of a substantial relationship between a child, whose mother had recently died, and her grandparents would be harmful to the child. The Utah court relied on the trial court's decision to credit, in its finding that the grandparents had rebutted the presumption that parents act in the best interest of their children, the conclusions reached by an expert that "(1) the child demonstrated an 'emotional attachment to her grandparents [that] was as strong as [that] seen between parents and children'; (2) the attachment could be explained by the grandparents' role as primary caregivers; (3) the loss of her mother remained a deep emotional wound for the child that had not been resolved; (4) the child kept the memory of her mother alive through her relationship with her grandparents; (5) *the*

---

[8] We find instructive several Superior Court decisions in the wake of the amended statute in which the court has concluded that the petition sufficiently alleged that denial of visitation would result in substantial emotional harm to the child, particularly in situations, such as that in the present case, in which the child had already experienced the death of a parent. See, e.g., *Alexopoulous* v. *Alexopoulous*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. FBT-FA-13-4042568-S (August 7, 2013) (56 Conn. L. Rptr. 622, 626) (grandparents adequately alleged that children would be harmed if visitation was denied because (1) disruption in grandparents' "ability to continue to forge a strong bond with their grandchildren [would] cause substantial harm to the children's emotional health," and (2) removal of "caring, loving, consistent and supportive role models from [the children's] lives" after death of their father would "cause them more pain and irreparable damage" (internal quotation marks omitted)).

*child would be unable to work through the loss of her mother without frequent access to her grandparents*; and (6) the loss of contact with the [grandparents] would be devastating and cause the child to suffer." (Emphasis added.) Id., 1095; see also *In re A.S.A.*, 21 Wn. App. 2d 474, 486, 507 P.3d 28 (2022) (Pennell, J., concurring) ("[t]rauma might be especially likely when a child has experienced the death of a parent and continued contact with the deceased parent's family is necessary for grief and healing").

In the present case, the plaintiff alleges that (1) she was L's primary provider of emotional support and primary caretaker, (2) L would look to her for comfort and support, (3) she is concerned about L's emotional well-being following the deaths of Patricia and Hallie, (4) L was abruptly taken away from her home and her primary caretaker, and (5) L has been very emotional since being cut off from her former life. The plaintiff also alleges in the amended petition that "[L] has reported feeling stressed, sick, and rundown. She has been sad, anxious, fearful, and confused. She reports excessive crying and crying herself to sleep because she has been cut off from [the plaintiff]. She sleeps with objects that remind her of 'home,' even though these objects are not comfortable for sleep. She had lost a lot of weight. She stated that she isn't doing well. She has made statements that show suicidal ideation." The plaintiff further alleges that the defendant's actions compounded the emotional harm that he caused to L by depriving her of a relationship with the plaintiff. During that time, the defendant mocked L for crying about the loss of her mother, yelled at her, cursed at her, and threw her up against a car. The allegations in the amended petition are more than sufficiently specific to satisfy the statutory pleading requirement by demonstrating that L is suffering significant emotional harm, manifesting itself through her conduct, statements, and

physical symptoms, as a result of the deprivation of her relationship with the plaintiff. Given our long-standing mandate to construe pleadings broadly and realistically; see, e.g., *Carpenter* v. *Daar*, supra, 346 Conn. 127; it is necessarily implied by the plaintiff's allegations that L will be emotionally harmed—and is currently being harmed emotionally—from being cut off from the plaintiff in such an abrupt and complete manner. If the plaintiff produces clear and convincing evidence to support these allegations, a fact finder may well conclude that visitation is necessary to help L work through her grief, cope with the other significant changes imposed on her daily life, and otherwise overcome the suffering that she has experienced as a result of her mother's death, among other things. Construing the allegations in the manner most favorable to the plaintiff, we conclude that the amended petition adequately pleads facts that would establish that L "is being denied proper care and attention . . . emotionally . . . ." General Statutes § 46b-120 (4) (B). Accordingly, the trial court incorrectly determined that the amended petition does not contain specific, good faith allegations that the denial of visitation would cause real and significant harm.

The defendant relies on the Appellate Court's decisions in *Fuller* v. *Baldino*, 176 Conn. App. 451, 168 A.3d 665 (2017), and *Romeo* v. *Bazow*, 195 Conn. App. 378, 225 A.3d 710 (2020), in arguing that the trial court properly dismissed the petition. This reliance is misplaced. With respect to the second prong of § 46b-59 (b), the petitions in *Romeo* and *Fuller* contained only the most general and conclusory allegations of harm, without the supporting factual basis found in the amended petition in the present case. Specifically, in *Romeo*, the Appellate Court concluded that the only harm alleged in the plaintiffs' petition was that " '[t]here can be no greater harm to a child than the neglecting to promote and foster a child's roots in family [and] friends which directly affect

the child's emotional growth and moral compass. The harm to the children, by deracinating their family roots is real and significant because it undermines a substantial part of who they are.' " *Romeo* v. *Bazow*, supra, 392. Similarly, in *Fuller*, the plaintiff alleged only that he had "a 'very strong bond' with the child and that the child 'suffers' and is 'very emotional' when unable to see [the plaintiff] . . . ." *Fuller* v. *Baldino*, supra, 459. In contrast, the amended petition in the present case contains specific factual allegations of harm, namely, that L is being harmed emotionally by being denied the ability to work through the death of her mother and grandmother, and the disruption of her entire life, with her primary provider of emotional support, the plaintiff.

Because the plaintiff adequately had alleged both the existence of a parent-like relationship and that the denial of visitation would cause real and significant harm, we conclude that the trial court improperly dismissed the amended petition. On remand, the plaintiff is entitled to an evidentiary hearing at which she must prove by clear and convincing evidence that she has a parent-like relationship with L and that denial of visitation would cause L real and significant harm. See General Statutes § 46b-59 (b).

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.